```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                                    :
                                          :   Docket #1:22-cv-01871-
 GHAZNAVI, HAMZA,                         :   KPF

                   Plaintiff,             :

  - against -                             :

 DE LONGHI AMERICA, INC.,                 :   New York, New York
                                              July 20, 2022
                   Defendant.             :
                                              REMOTE INITIAL
--------------------------------------    :   PRETRIAL CONFERENCE

                        PROCEEDINGS BEFORE
              THE HONORABLE KATHERINE POLK FAILLA,
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiff:           BURSOR & FISHER, P.A.
                         BY:  JULIAN COLE DIAMOND, ESQ.
                         888 Seventh Avenue
                         New York, New York 10019

For Defendant:           FITZPATRICK & HUNT, PAGANO &
                         AUBERT, LLP
                         BY:  THOMAS EDWARD HEALY, ESQ.
                              RICHARD E. PETRILLO, ESQ.
                         1 Landmark Square, 21st Floor 06901
                         Stamford, Connecticut 06901




Transcription Service:   Carole Ludwig, Transcription Services
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

## **INDEX**

### **E X A M I N A T I O N S**

| **Witness** | **Direct** | **Cross** | **Re-Direct** | **Re-Cross** |
|---|---|---|---|---|
| None | | | | |

### **E X H I B I T S**

| **Exhibit Number** | **Description** | **ID** | **In** | **Voir Dire** |
|---|---|---|---|---|
| None | | | | |

```
 1                          PROCEEDINGS                        3
 2              THE CLERK:  Your Honor, this is in the matter of
 3   Ghaznavi versus DeLonghi America, Inc.
 4              Counsel, please state your names for the record,
 5   beginning with plaintiff.
 6              MR. JULIAN C. DIAMOND:  My name is Julian
 7   Diamond from the law firm Bursor & Fisher for plaintiffs,
 8   your Honor.
 9              HONORABLE KATHERINE POLK FAILLA (THE COURT):
10   Good morning, sir.  Thank you.
11              And representing DeLonghi?
12              MR. THOMAS E. HEALY:  Yes.  Good morning, your
13   Honor.  Tom Healy and Rich Petrillo on behalf of
14   defendant, DeLonghi America, Inc., from the law firm of
15   Fitzpatrick & Hunt, Pagano & Aubert.
16              THE COURT:  Thank you.  Mr. Healy, is it you I'm
17   talking to at this moment?
18              MR. HEALY:  Yes, you are, your Honor.
19              THE COURT:  Thank you.  And are you taking the
20   lead this morning, sir; or should I be directing my
21   questions to Mr. Petrillo?
22              MR. HEALY:  I will be taking the lead, your
23   Honor.
24              THE COURT:  Thank you for letting me know.
25              Good morning to all of you.  Welcome to our
```

```
 1                         PROCEEDINGS                        4
 2   initial conference in this case.  It is also a pre-motion
 3   conference.  In preparation for this proceeding I
 4   reviewed the First Amended Complaint in this matter, I've
 5   reviewed the defendant's pre-motion letter, and I've
 6   reviewed the plaintiff's pre-motion response.
 7            Mr. Diamond, before I start talking about the
 8   contemplated motion, I wanted to know whether you and
 9   your client had any thoughts about amending the Complaint
10   further.  I'm not suggesting you need to, sir, but what
11   I'm trying to avoid for all of us is the situation where
12   a motion to dismiss is filed and you respond with a
13   proposed Amended Complaint.  So, Mr. Diamond, could you
14   give me your thoughts about amendment?
15            MR. DIAMOND:  We've already amended once, your
16   Honor.  Unless something unexpected happens, I don't
17   think we're going to have any plans of amending again
18   right now.
19            THE COURT:  Thank you.  I appreciate knowing
20   that so then I can talk about this motion.
21            Mr. Healy and Mr. Diamond -- and Mr. Petrillo,
22   for that matter -- let me just give you a few thoughts.
23   And these are quite nascent thoughts based on the little
24   research that I've done so far and my review of these
25   documents.  Looking at the contemplated motion to
```

```
 1                          PROCEEDINGS                          5
 2   dismiss, I'm really not sure that I see a strong standing
 3   argument for the defense, and I'm also not sure that I
 4   see a strong personal jurisdiction argument to be made by
 5   the defense.  But I would like to understand a little bit
 6   better than I currently do the plaintiffs, Magus and Moss
 7   and New York GBL 349 claims.  So, Mr. Healy, let me ask
 8   you this question:  Just to oversimplify the matter for a
 9   moment -- and, of course, sir, you're welcome to push
10   back on this -it seems to me that a really key issue for
11   your motion is whether there is a cost to plaintiff of
12   any of the repair that your clients' warranty authorizes
13   and whether I would be able to make a determination as to
14   cost or lack of cost in the context of a motion to
15   dismiss.  And just to be a little bit more specific,
16   Mr. Healy, I understood from your pre-motion submission
17   that your client provides perhaps mailing labels or
18   return mail authorizations or packing materials for
19   individuals or customers who wish to send products back
20   for repair.  Am I correct with that observation, sir?
21            MR. DIAMOND:  Yes.  Basically, your Honor, with
22   respect to the letter machine, which is the machine that
23   was purchased by Hamza Ghaznavi, the plaintiff,
24   plaintiffs have two options.  They can go to an
25   authorized service center, or they can call the service
```

```
 1                         PROCEEDINGS                         6
 2   center, and for the letter machine they provide a box and
 3   label for shipment for free.
 4            THE COURT:  Okay, now, how -- I understand that
 5   you've just told me that -- how would I know that from
 6   the documents that are before me now?  For example, is it
 7   in the warranty itself that if you call the service
 8   center, they will provide the mailing or packaging
 9   materials?
10            MR. HEALY:  No, it is not in the warranty.  That
11   is something that just as a matter of practice we have
12   learned that they do with respect to the (indiscernible)
13   as part of our investigation.
14            THE COURT:  Okay.  And so let me just muse with
15   you for a moment, sir.  I am unconstrained in what I may
16   consider in the context of a motion to dismiss.  Your
17   adversary says that the free repair is not in fact free
18   because he has to pay for the shipping of the materials.
19   If it turns out that he doesn't, that's interesting, that
20   may make for a great partial summary judgment motion at
21   some later date, but it's just not clear to me what I may
22   consider in the context of the 12(b)(6) motion that would
23   allow me to arrive at that conclusion.  So could you help
24   me on that point first?
25            MR. HEALY:  It's not in the warranty, it's not
```

```
 1                        PROCEEDINGS                        7
 2   in the pleadings.  If your Honor wanted some type of -- I
 3   understand your constraints, the pleadings.  But if your
 4   Honor wanted something more from our client on that
 5   issue, we certainly could provide it.  But in terms of
 6   the cost issue itself, there is nothing in the pleadings
 7   that would provide that information.
 8            THE COURT:  Okay.  And I just want you to keep
 9   that in mind as we talk about the viability of your
10   motion to dismiss.  I know there were suggestions by
11   plaintiff that the deprivation of the product for the
12   time that it was being repaired is a cost.  I don't find
13   that especially persuasive.
14            There are some issues about the risk to him of
15   damage in transit to repair.  I'm still thinking about
16   whether I find that persuasive.  And there's a second
17   risk that's disclosed, which is the risk that your
18   client, upon receiving the product sent back to it, will
19   disclaim applicability of the warranty.  Again, I'm not
20   sure that amounts to or that makes your warranty in any
21   way deceptive or misstates what you're willing to do.
22   But I am sort of constrained by what I'm constrained
23   with.  And so I just want to keep that in mind.
24            Mr. Healy, if you want to engage with me on
25   standing and personal jurisdiction, you're invited to do
```

```
 1                         PROCEEDINGS                        8
 2   so at this time.  I just -- again, it seems to me that
 3   plaintiff's argument about the premium, whether -- you
 4   know, at least as I have to accept it at this stage --
 5   might result in him having standing.  And on the personal
 6   jurisdiction issue, I suspect that's something -- that's
 7   for a later motion, if at all.  But go ahead and push
 8   back if you think I'm wrong.
 9             MR. HEALY:  Sure.  No, with respect to the
10   standing issue, we believe there's no standing because
11   the plaintiff has suffered no injury in fact and there's
12   no causation.  We see this as a case where there's no
13   damages, no causation, they haven't plead a breach-of-
14   warranty claim.  I'm aware of the price premium cases
15   that are referred to by the plaintiff, but we believe
16   those involve different situations where you have, you
17   know, misleading advertisements about food content or a
18   missing ingredient.  And we don't believe that's what we
19   have here.  And we're aware of cases pursuant to the GBL
20   where price premium itself is not sufficient to
21   demonstrate an injury under the GBL.  And even under that
22   case that we're aware of, we know that plaintiff must
23   show a connection between the alleged misrepresentation
24   and any harm from failure -- from or failure of the
25   product.
```

```
 1                          PROCEEDINGS                          9
 2              We also believe it's important here with respect
 3   to the standing claim that the plaintiff has not alleged
 4   some unique quality that allowed DeLonghi to charge a
 5   price premium for the product or that the plaintiff paid
 6   a premium and later learned that the product did not have
 7   in fact the marketed qualities.  So with respect to the
 8   standing claim, we believe we do have a valid claim.
 9              With respect to the personal jurisdiction claim,
10   I am aware of, I believe one of your cases, where they
11   deferred claims with respect to out-of-state class
12   members being dismissed to the class certification stage.
13   And, certainly, if your Honor is saying that with respect
14   to personal jurisdiction that objection and defense would
15   be preserved to a later date, that's something we could
16   take up at a later date.
17              THE COURT:  Okay, yes, again, I appreciate you
18   finding my case.  I just didn't see this as the motion
19   for it.
20              If I could just engage with you a little bit
21   more on the standing issue?  I want to understand what
22   you're saying.  You're saying that, with respect to the
23   price premium, the plaintiff would have to allege some
24   quality that your client has touted that accounts for
25   that premium that then has been misrepresented.  So, for
```

```
 1                         PROCEEDINGS                        10
 2   example, if DeLonghi were to say you will never have a
 3   problem in your first month, and he pays extra because
 4   he'll never have a problem in the first month and then he
 5   has a problem in the first month, you'd say that might
 6   give him standing.  But here, some amorphous claim of a
 7   premium does not equate or does not relate to the
 8   warranty claims they're now bringing; or have I
 9   misunderstood your argument?
10            MR. HEALY:  Yes.  And, you know, we got the
11   plaintiff's papers late on Thursday, and we're still
12   researching the issue, but we believe there's case law
13   that supports that.
14            THE COURT:  Okay.  All right.  Mr. Diamond,
15   turning to you, sir, Mr. Diamond, is the machine just
16   sitting on a counter somewhere not working?
17            MR. DIAMOND:  I don't have that information
18   right now.  I know that it's not working to the extent
19   that he would like it to, but he doesn't want to take the
20   chance of, you know, sending in for an expensive
21   shipment, you know, or of it breaking.  It's an $1,100
22   machine, it's an expensive machine, it's pretty delicate.
23   And, you know, he'd just prefer to have the choice to be
24   able to repair it himself or to take it to his preferred
25   repair service.
```

```
 1                      PROCEEDINGS                    11
 2              THE COURT:  Okay, well, let's please pause right
 3   there.  You're saying -- you didn't say it's not working;
 4   you're saying it's not working as he expected or expected
 5   it should be working.  In what precise way is this
 6   machine not working as it should?
 7              MR. DIAMOND:  If I can recall correctly, I think
 8   it's something with like the filter.  It still produces
 9   coffee, but it's not -- you know, it's a slight
10   malfunction.
11              THE COURT:  I don't know what a slight -- no, so
12   what is a "slight malfunction" with the filter?  Does it
13   mean that -- you're bringing a huge, nationwide class
14   action on this, so you've got to tell me what it is that
15   the machine fails to do that it's supposed to do?
16              MR. DIAMOND:  I think it's something about like
17   the clogging of the filter, your Honor, but I don't have
18   the precise -- I could get that for you, if you'd like,
19   but I don't have the precise information.
20              THE COURT:  Well, that's something you should
21   have before you filed a Complaint in this case, sir, so
22   I'll expect you to explain it to me at some later date.
23              Let me understand a different issue.  Your
24   client -- I, too, would be worried about a product being
25   damaged in shipment, although is it not the case the
```

```
 1                        PROCEEDINGS                      12
 2   product itself was shipped in order to get to the Home
 3   Depot store where your client bought it?  So there is
 4   precedent for it being shipped.  It's not as though it
 5   was crafted in your client's residence.  Your client
 6   doesn't wish to ship it, but I am advised by DeLonghi
 7   that your client could drive or get an Uber or do
 8   something and bring the product to a service center a few
 9   miles away.  He's not interested in doing that, either.
10   Is there a similar concern about damage or something
11   else?
12             MR. DIAMOND:  Well, your Honor, I think to that
13   point I would rely on the pleadings.  I'd say that's far
14   outside the pleadings.  I know, you know, it's a third-
15   party repair service.  There's about 20 or so in the
16   entire country.  I know that in some of the other cases
17   we pursued, the point of the repair service is that when
18   contacted it turned out that they're no longer under --
19   you know, they haven't been in a contract with the
20   defendant for years.  I have no idea if that's the case
21   here.  We haven't explored it.  I would just say it's
22   outside the pleadings at this stage.
23             We also --
24             THE COURT:  I think --
25             MR. DIAMOND:  Sorry, your Honor.  We also
```

```
 1                         PROCEEDINGS                     13
 2   wouldn't know if there's, you know, additional
 3   procedures, how long it would take.  You know, the point
 4   of this case is the law gives him a choice, and it's a
 5   choice that the defendant has chosen not to give him,
 6   despite what the law says.
 7             THE COURT:  All right, well, let's explore that
 8   choice.  You said that what your client wants is the
 9   ability to self-repair or to bring it to a third-party
10   repair.  Now, self-repair obviously would minimize the
11   possibility of something being damaged in transit, but is
12   your client's concern that self-repair would -- what does
13   "self-repair" mean?  Do you actually mean that he himself
14   is going to work on it or that he is going to himself
15   decide how to repair it?
16             MR. DIAMOND:  It's an either/or, your Honor.  I
17   mean, according to the language of defendant's
18   warranties, if he so much as opened it up and tinkered
19   with it a little bit, he would no longer have any
20   warranty whatsoever.  It's not like a -- you know, other
21   warranties, I would say a lawful warranty would say,
22   sure, if you have damage when you attempt to repair it,
23   we're not going to cover the damage; but I would say an
24   unlawful warranty, like defendant's, says if you try to
25   tinker with it, the warranty ceases to exist.  And I
```

```
 1                       PROCEEDINGS                    14
 2  think that's what he's worried about, your Honor.
 3             THE COURT:  I see.  But on the issue of third-
 4  party repair, you said he wants the option to potentially
 5  bring it to someone he trusts to repair it.  Did I
 6  understand that correctly?
 7             MR. DIAMOND:  That would be part of it.  Or
 8  himself.  Either one, your Honor.
 9             THE COURT:  I understand. But with respect to
10  the third party, isn't the issue of damage in transit the
11  very same issue that you've identified as a reason why he
12  refuses to ship it to DeLonghi or to bring it to the
13  authorized repair center that they've identified?
14             MR. DIAMOND:  I would distinguish it, your
15  Honor.  I would say, you know, like maybe his repair is,
16  you know, his next-door neighbor, maybe, you know, if you
17  live in New York, I'm sure it's like a -- you see repair
18  centers all the time.  Maybe you could walk it in.
19             And as to your earlier point about the, you
20  know, that it's been shipped before, that's in, you know,
21  lots of packaging and it was -- when it was shipped to
22  him, he was not responsible for any damage in transit,
23  right; he doesn't -- you know, he doesn't have -- he may
24  not have, you know, packing materials.  You know, and
25  it's a big purchase, your Honor; it's $1,100.  That's a
```

```
 1                       PROCEEDINGS                       15
 2  big risk for him.
 3           THE COURT:  Yes.  Although, again, it just
 4  confounds me that he's just sitting there dealing with a
 5  machine that, in his estimation, doesn't work to the
 6  level it should rather than trying to have it fixed.  But
 7  that is, of course, the choice that he has made.
 8           All right, Mr. Diamond, what else would you like
 9  me to know at this time, sir?
10           MR. DIAMOND:  Unless your Honor has any further
11  questions for me, I'd be ready to rest on the papers.
12           THE COURT:  Okay.  Thank you.
13           Mr. Healy, I hope you and your colleague have
14  been listening through this conference.  I'm not saying
15  that you won't win this case at some later date -- and
16  that later date may be trial, that later date may be
17  summary judgment -- I have my doubts that you'll be able
18  to prevail on a motion to dismiss, but I understand
19  you're continuing to research the issue.  I just want to
20  be clear with my views, even though they are, as I've
21  said, nascent and certainly subject to change based on
22  the research you identify for me.
23           Mr. Healy, I suspect that I will not be able to
24  persuade you not to bring this motion to dismiss, so
25  please talk to me about the time frame that you'd like to
```

```
 1                        PROCEEDINGS                        16
 2   submit your opening brief.
 3             MR. HEALY:  Yes, your Honor.  We would like to
 4   pursue the motion; and if we could have till the end of
 5   August for our papers or somewhere near the end of
 6   August, due to the vacation schedules of people in our
 7   office, that would be -- we would be grateful for that.
 8             THE COURT:  Okay.  I understand.
 9             Let's then say August 31st, because that is a
10   date at the end of August.  Let me -- may I please have
11   the opposition by September 30th, and may I also please
12   have the reply by October 14th?
13             Mr. Healy, does that schedule work for you?
14             MR. HEALY:  Yes, it does, your Honor.
15             THE COURT:  Thank you.
16             Mr. Diamond, does that schedule work for you?
17             MR. DIAMOND:  Yes, it does, your Honor.  But
18   could you repeat when the initial motion to dismiss is
19   due?
20             THE COURT:  The initial submission, the opening
21   brief, is due on August 31st; your response on
22   September 30th; and the reply, if any, on October 14th.
23             MR. DIAMOND:  Thank you, your Honor.
24             THE COURT:  Okay.  I thank you all very much.  I
25   think these are some very interesting issues that we're
```

```
 1                        PROCEEDINGS                    17
 2  raising, and I look forward to seeing them briefed by the
 3  parties.
 4            With that, I will wish you, your clients and
 5  your families continued safety and good health during
 6  this pandemic.  We are adjourned.  Thank you.
 7            (Whereupon, the matter is adjourned.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                                                                18
 2
 3                      C E R T I F I C A T E
 4
 5        I, Carole Ludwig, certify that the foregoing
 6   transcript of proceedings in the case of Ghaznavi v. De
 7   Longhi America, Inc., Docket #22-cv-01871-KPF, was
 8   prepared using digital transcription software and is a
 9   true and accurate record of the proceedings.
10
11
12
13   Signature_____Carole Ludwig_____
14                   Carole Ludwig
15   Date:     July 21, 2022
16
17
18
19
20
21
22
23
24
25
```