UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────────┐
│ HAMZA GHAZNAVI, individually and on behalf    │
│ of all others similarly situated,             │
│                                               │
│                        Plaintiff,             │
│                                               │
│                  -v.-                          │
│                                               │
│ DE LONGHI AMERICA, INC.,                       │
│                                               │
│                        Defendant.             │
└─────────────────────────────────────────────┘
```

22 Civ. 1871 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Hamza Ghaznavi would like to tinker, or have someone of his choosing tinker, with his "slightly malfunction[ing]" coffeemaker. He has refrained from doing either, however, for fear of voiding the manufacturer's warranty, which permits repairs only by authorized service providers. Instead, Plaintiff brings this putative class action lawsuit, challenging the repair restriction as unlawful under both a federal statute that regulates consumer warranties and New York laws barring deceptive and fraudulent business practices. Ultimately, the Court does not reach the merits of his claims because it lacks both constitutional and statutory authority to do so. Instead, for the reasons that follow, the Court grants Defendant's motion to dismiss for lack of subject matter jurisdiction.

**BACKGROUND**[1]

## A.    Factual Background

In or about May 2020, Plaintiff, a New York resident, purchased a De'Longhi Eletta Fully Automatic Espresso Cappuccino and Coffee Maker (the "Coffee Maker").  (AC ¶ 3).  Although the Coffee Maker is manufactured by Defendant De Longhi America, Inc. (*id.* ¶¶ 1, 5), Plaintiff purchased his online from Costco.com for $1,099.99 (*id.* ¶ 3).  Costco shipped the Coffee Maker to Plaintiff's home.  (*Id.* ¶ 3).  At the time of his purchase, Plaintiff believed that the Coffee Maker's warranty, which was available on Costco's website, complied with state and federal law.  (*Id.*).

Plaintiff's Coffee Maker is protected by a two-year warranty (the "Warranty") that applies to products purchased from Defendant and its authorized distributors.  (*See generally* Warranty).  The Warranty guarantees that Defendant will provide two years of "free parts and labor" to remedy defects in the Coffee Maker's material and workmanship.  (*Id.*).  To take advantage of the warranty, the consumer must ship the malfunctioning

---

[1]    The Court draws its facts from the Amended Complaint (the "AC" (Dkt. #15)), the well-pleaded allegations of which are taken as true for the purposes of this Opinion.  The Court additionally draws from the Coffee Maker's warranty (the "Warranty"), which is incorporated by reference in the AC and available at https://www.costco.com/wcsstore/CostcoUSBCCatalogAssetStore/Attachment/Warranty-2-Year.pdf.  (AC ¶ 3).  *See also Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (explaining that on motions to dismiss, courts may consider documents incorporated by reference in or otherwise integral to the complaint).

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #23); to Plaintiff's memorandum of law in opposition to Defendant's motion as "Pl. Opp." (Dkt. #25); and to Defendant's reply in further support of its motion as "Def. Reply" (Dkt. #28).  While Plaintiff refers to Defendant as "De Longhi," Defendant's submissions spell the name as "De'Longhi."

product to an authorized De'Longhi Group service center at their own expense. (*Id.*). "For added protection and secure handling," Defendant "recommend[s that consumers] use a trackable insured delivery method." (*Id.*). Defendant may then "either repair the product with new or remanufactured parts, or replace the product entirely, either with a new or certified remanufactured product at no additional charge to [the] consumer." (*Id.*). Defendant bears the cost of return shipping. (*Id.*). The warranty does not apply to "any product that has been repaired or altered outside [Defendant's] factory," "any product that has been subjected to misuse, negligence, or accidents," or any product lost or damaged while in transit to be repaired. (*Id.*).

Shortly after Plaintiff purchased the Coffee Maker, it "began to slightly malfunction." (AC ¶ 4). Plaintiff wished to repair it himself, but did not because doing so would void the product's warranty. (*Id.*). He also did not send the Coffee Maker to Defendant to repair, because he did not want to pay for postage and insurance, did not want to assume the risk of it being lost or damaged in transit, and did not want to be temporarily deprived of its use. (*Id.*). Instead, Plaintiff retained his slightly malfunctioning Coffee Maker and filed this lawsuit. Plaintiff believes the Warranty to be unlawful, and alleges that had he known of such unlawfulness at the time of his purchase, he would not have purchased the Coffee Maker or would have paid significantly less for it. (*Id.* ¶ 1).

B.     **Procedural Background**

Plaintiff filed this putative class action on March 4, 2022.  (Dkt. #1).  He

brings several claims: (i) a federal claim under the anti-tying provision of the

Magnuson-Moss Warranty Act (the "MMWA"), 15 U.S.C. § 2302(c), and state-

law claims for (ii) unjust enrichment, (iii) fraud, (iv) fraudulent omission, and

(v) deceptive business practices.  (AC ¶¶ 51-89).  He seeks damages and a

declaration that the Warranty is unlawful under the MMWA's anti-tying

provision.  (*Id.* ¶¶ 90-95; Prayer for Relief).

On April 8, 2022, the Court granted Defendant's request for an extension

of its deadline to answer or otherwise respond to the complaint.  (Dkt. #7, 9).

Subsequently, the parties advised the Court by letter of Plaintiff's intent to

amend his pleading.  (Dkt. #12).  The Court adopted the parties' proposed

deadlines for such amendment and for Defendant's response.  (Dkt. #13).  In

line with that schedule, Plaintiff filed the Amended Complaint on June 13,

2022.  (Dkt. #15).

On July 12, 2022, Defendant filed a letter requesting a conference to

discuss its anticipated motion to dismiss in accordance with Rule 4.A. of the

Court's Individual Rules of Practice in Civil Cases.  (Dkt. #16).  Two days later,

Plaintiff filed a letter detailing his intended opposition to such motion.  (Dkt.

#19).  The Court held a conference on July 20, 2022, at which it set a briefing

schedule for Defendant's motion.  (Dkt. #20).

Defendant filed its motion to dismiss and accompanying papers on

August 31, 2022.  (Dkt. #22-24).  In its motion, Defendant asserts both that

the Court lacks subject matter jurisdiction over this action and that Plaintiff has failed to plead any of his claims adequately.  Plaintiff filed his opposition along with a request for the Court to take judicial notice of certain documents posted to the website of the Federal Trade Commission (the "FTC") on September 30, 2022.  (Dkt. #25-26).  The motion became fully briefed upon Defendant's October 14, 2022 reply filing.  (Dkt. #28).  Subsequently, each party filed notices of supplemental authorities decided after the motion was briefed.  (Dkt. #31-37).

## DISCUSSION

### A.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

A party may move to dismiss a complaint for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  The subject matter jurisdiction of the federal district courts is limited.  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova* v. *United States,* 201 F.3d 110, 113 (2d Cir. 2000).

A Rule 12(b)(1) motion can be either "facial," meaning it is based solely on the allegations of the complaint and exhibits attached to it, or "fact-based," meaning it is based on evidence beyond the pleadings.  *Harty* v. *W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) (quoting *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)).  A plaintiff opposing a facial Rule 12(b)(1) motion bears "no evidentiary burden."  *Carter*, 822 F.3d at 56.  Instead, to resolve a facial Rule 12(b)(1) motion, the court must determine

whether the complaint and its exhibits allege facts that establish subject matter jurisdiction. *Id.* In making that determination, the court must accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff. *Id.* at 57.

Subject matter jurisdiction "is a threshold issue that must be addressed prior to the merits." *Bates* v. *Offit Kurman Att'ys at L. LLP*, No. 19 Civ. 2814 (KPF), 2019 WL 7067092, at *2 (S.D.N.Y. Dec. 23, 2019) (internal quotation omitted). "[A]ny party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *Manway Constr. Co.* v. *Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983); *see Ruhrgas AG* v. *Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative[.]"). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## B. The Court Dismisses This Case for Lack of Subject Matter Jurisdiction

As it must, the Court begins by considering whether it has authority to consider the merits of this action. For the two independent reasons explained below, it does not.

### 1. Plaintiff Has Failed to Allege Article III Standing

Constitutional standing is a necessary component of subject matter jurisdiction. *Carter*, 822 F.3d at 54. Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" and thereby

6

"restricts the authority of federal courts to resolving 'the legal rights of litigants in actual controversies[.]'" *Genesis Healthcare Corp.* v. *Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Valley Forge Christian Coll.* v. *Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)).  This "Case" or "Controversy" requirement means that only those disputes that meet the "irreducible constitutional minimum" of standing can be heard in a federal forum.  *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Warth* v. *Seldin*, 422 U.S. 490, 498 (1975) (explaining that standing is a "threshold question in every federal case, determining the power of the court to entertain the suit").

The question of Plaintiff's constitutional standing is properly before the Court.  Although Defendant challenges the Court's subject matter jurisdiction over this action, its arguments appear to be addressed to the Court's statutory authority to hear this case rather than Plaintiff's Article III standing.  (*See* Def. Br. 4-6).  That said, Defendant's separate contention that Plaintiff failed to state a claim under the MMWA because he failed to allege an injury-in-fact sounds in constitutional injury (*see id.* at 9-11), and Defendant has noticed recently-decided supplemental authorities regarding standing to bring similar MMWA claims (Dkt. #35, 36).  Plaintiff has had a full opportunity to respond to both.  (Pl. Opp. 9-12; *see also* Dkt. #37 (Plaintiff's response to supplemental authority)).  And as noted, the Court has an independent obligation to assure itself of its jurisdiction to hear this matter.  *Lyndonville Savs. Bank & Trust Co.* v. *Lussier*, 211 F.3d 697, 700 (2d Cir. 2000) ("It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over

which they lack subject matter jurisdiction.  Unlike failure of personal

jurisdiction, failure of subject matter jurisdiction is not waivable and may

be raised at any time by a party or by the court *sua sponte.*").

　　Having established its ability to consider Plaintiff's standing, the Court

reviews the familiar requirements of Article III.  To have standing, a federal

plaintiff must prove three elements:

> First, the plaintiff must have suffered an injury in
> fact — an invasion of a legally protected interest which
> is (a) concrete and particularized; and (b) actual or
> imminent, not conjectural or hypothetical.    Second,
> there must be a causal connection between the injury
> and the conduct complained of ....    Third, it must be
> likely, as opposed to merely speculative, that the injury
> will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (citations and internal quotation marks omitted); *see*

*also Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 90 (2013) (explaining that standing

requires a "personal injury fairly traceable to the defendant's allegedly unlawful

conduct and likely to be redressed by the requested relief" (internal citation and

quotation marks omitted)).

　　The injury component of standing is satisfied only by harms that are

"'concrete' — that is, 'real, and not abstract.'"  *TransUnion LLC* v. *Ramirez*, 141

S. Ct. 2190, 2204 (2021) (quoting *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 340

(2016)).  For an asserted harm to be concrete, it must be of a type

"'traditionally' recognized as a providing a basis for a lawsuit in American

courts."  *Id.* (quoting *Steel Co.* v. *Citizens for Better Env't*, 523 U.S. 82, 102

(1998)).  That criteria can be met for harms ranging from the tangible (such as

physical or monetary injuries) to the intangible (such as reputational harms or disclosure of private information). *Id.* It can also be met for harms that are relatively small. *Nat. Res. Def. Council, Inc.* v. *U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) (explaining that "[e]ven a small financial loss" can suffice under Article III).

While courts are still defining the universe of concrete harms that qualify as Article III injuries, one type of alleged injury is clearly excluded: "bare procedural violation[s]" that are "divorced from any concrete harms." *Spokeo*, 578 U.S. at 341. In other words, it is not enough for a federal statue to create a cause of action and authorize individuals to sue to vindicate that right; the plaintiff must also be personally harmed by the violation. *See id.*; *see also* CHARLES ALAN WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 8335 (2d ed. 2023). The Supreme Court recently reiterated this canonical principle of standing law:

> [A]n important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law. Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.

*TransUnion*, 141 S. Ct. at 2205 (emphasis in original). *TransUnion* offered an example to concretize this distinction: of all the people interested in suing a

factory for violations of an environmental law, only the subset who are personally impacted by the unlawful emissions (due to negative health impacts, diminution in the value of their abutting property, or the like), may sue.  *Id.* at 2205-06; *see also Spokeo*, 578 U.S. at 341-43 (remanding for lower court to limit putative class to only those individuals concretely harmed by online database's publication of false information).

Two recent decisions addressing consumers' standing to bring MMWA claims further illustrate this concept.  In *Schaer* v. *Newell Brands Inc.*, a consumer challenged the legal sufficiency of the warranty on her coffee maker (made by a different manufacturer and sold by a different retailer than Plaintiff's) under the MMWA.  No. 22 Civ. 30004 (MGM), 2023 WL 2033765, at *1 (D. Mass. Feb. 16, 2023).  When the *Schaer* plaintiff's coffee maker "began to slightly malfunction," she performed "minor disassembly … in an attempt to fix the issue."  *Id.*  Accepting the plaintiff's allegation that such tinkering voided her coffee maker's warranty, the *Schaer* court determined that she adequately pleaded an injury-in-fact.  *Id.*  In brief, Plaintiff was injured by the warranty's allegedly unlawful repair restriction because the value of her coffee maker decreased (and thus she overpaid for it) as a result of her disassembly and the consequent voiding of the warranty.  *Id.* ("The court also agrees with Plaintiff that a product that contains an unlawful warranty — that is voided by any attempt to repair or adjust any electrical or mechanical functions — is worth less than a product that does not contain such a restriction.  This, i[n] and of itself, would be an injury in fact.  After all, a relatively small economic loss —

even an identifiable trifle — is enough to confer standing." (internal citations and quotation marks omitted)).

A New Jersey district court reached the opposite conclusion on different facts in *Konkel* v. *Brother International Corp.*, No. 22 Civ. 479 (ZNQ) (RLS), 2023 WL 3585354 (D.N.J. May 22, 2023). The facts of *Konkel* are analogous to the instant case: Two consumers sued printer distributors alleging that the warranties on their printers unlawfully restricted self-repair in violation of the MMWA. *Id.* at *1-2. The plaintiffs alleged: (i) they would have liked to repair the printers themselves but the warranty prevented them from doing so, (ii) they would not have purchased (or would have paid less for) the printers had they been aware of the warranty's repair restriction, and (iii) they chose not to send the printers to the distributors to repair as contemplated by the warranty because they did not want to bear the cost of shipping or be deprived of use of the printer pending such repair. *Id.* at *2. The *Konkel* court dismissed the case for lack of standing, concluding that the operative pleading "does not allege an actual injury to [p]laintiffs other than the [w]arranties' purported violation of the [MMWA]" — a purely statutory violation. *Id.* at *5. Unlike the plaintiff in *Schaer*, whose attempt at self-repair voided the warranty on her coffee maker, the *Konkel* plaintiffs' warranties were in full force at the time of suit, and thus their products still enjoyed their full value. *Id.* at *6. And the *Konkel* court rejected the consumers' argument that they were injured by paying a premium for their printers' warranties because they supported such

argument with only "threadbare, conclusory allegations" insufficient to defeat a motion to dismiss.  *Id.*

The Court finds no principled way to distinguish this case from *Konkel*. Indeed, the operative pleading in this suit mirrors the allegations in *Konkel* almost word for word.  Even if the Warranty were in fact unlawful, Plaintiff has not alleged that he was concretely harmed by it.  For one, the Coffee Maker still retains its full value because the Warranty is currently operative — Plaintiff has not voided it by attempting to repair it himself or by taking it to an unauthorized repair shop.  (*See* AC ¶ 4).  And Plaintiff has not yet incurred any expense in complying with the Warranty; he has not, for instance, shipped the Coffee Maker to the De'Longhi facility for repair and so has not paid for shipping, insurance, or other incidentals that would certainly be cognizable economic injuries.  (*Id.*).[2]  *See Konkel*, 2023 WL 3585354, at *6 (emphasizing, in finding a lack of standing, that the consumer-plaintiffs stated only a vague intent to repair their own printers but did not actually endeavor to do so).  The only injury Plaintiff has suffered is possessing a possibly unlawful warranty, an injury that plainly falls within the category of bare procedural violations that alone are insufficient to confer standing.

---

[2]     The Court acknowledges that subpar coffee (due to a malfunctioning machine) could possibly be a cognizable injury-in-fact.  But to the extent that Plaintiff claims this as his injury, he faces the different legal hurdle of establishing causation.  His machine's malfunction was not caused by its allegedly unlawful warranty; that failure is perhaps the subject of a separate products liability action.  *See Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (explaining that the claimed injury must be "fairly traceable' to the challenged action of the defendant).

To be sure, a well-pleaded allegation of likely future injury can support standing. *See Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 158 (2014) (explaining that to establish standing based on future injury, a plaintiff must allege a "substantial risk" of injury); *see also Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[T]hreatened injury must be certainly impending to constitute injury in fact." (quoting *Whitmore* v. *Arkansas*, 495 U.S. 149, 158 (1990))). Under this approach, the Court would be more amenable to finding standing had Plaintiff alleged imminent future plans to void the Coffee Maker's Warranty or to incur shipping costs. *Cf. Summers* v. *Earth Island Inst.*, 555 U.S. 488, 495-96 (2009) (finding vague and unspecified future plans insufficient to confer standing). But Plaintiff has not done so. In fact, he pleaded the opposite: In claiming that he would repair the Coffee Maker himself or mail it to Defendant but for the Warranty's repair restriction (*see* AC ¶ 4), Plaintiff denies any present intent to void the Warranty or incur any financial loss and thereby *disclaims* any future injury. As currently pleaded, then, a possibility of future injury does not remedy Plaintiff's failure to allege a cognizable harm.

Plaintiff's price premium theory fares no better. Plaintiff alleges that he "would not have purchased the [Coffee Maker], or would have paid significantly less for [it], had he known that [the Warranty] did not comply with state and federal law." (Pl. Opp. 10 (quoting AC ¶ 4)). It is true that in general, a consumer who overpays for a product in reliance on a misleading representation on the label may sue to recoup the price difference. *Axon* v.

13

*Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701, 703-04 (2d Cir. 2020) (summary order) (citing *Langan* v. *Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 92 (2d Cir. 2018)).  The Court has some reservations about extending this line of cases to the instant case, however.  For one, the representation at issue — that the Warranty is enforceable — is implied rather than explicit.  And it is different in kind from the representations at issue in the product labeling cases.  Unlike promises that a product is "all natural," *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12 MD 2413 (RRM)(RLM), 2013 WL 4647512, at *15 (E.D.N.Y. Aug. 29, 2013), or "anti-aging," *Nguyen* v. *Algenist LLC*, No. 22 Civ. 13 (KPF), 2022 WL 17251773, at *6-7 (S.D.N.Y. Nov. 28, 2022), or contains a specified ingredient, *Koenig* v. *Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 278-88 (S.D.N.Y. 2014) — which are all representations about a product's nature, effects, or origin — the truth of a representation of lawfulness may not be knowable to the speaker at the moment of sale.

More fundamentally, Plaintiff cannot disclaim prior knowledge about the terms of the Warranty.  Overpayment injuries are premised on deceit.  In consequence, consumers who are aware of a product's true nature (in other words, to whom the terms of the deal are fully disclosed) cannot claim that they would have paid less for a product had they been informed.  *See Berni* v. *Barilla S.P.A.*, 964 F.3d 141, 148 (2d Cir. 2020) (explaining that false advertising consumer with actual knowledge of the disputed condition would not have standing to bring claim for injunctive relief); *see also Gordon* v. *Target Corp.*, No. 20 Civ. 9589 (KMK), 2022 WL 836773, at *8 (S.D.N.Y. Mar. 18, 2022)

(applying this principle).  Defendant made the full terms of the Warranty available for consumers to assess prior to purchase; the Amended Complaint makes clear that the Warranty is publicly available on Costco's website.  (AC ¶ 3).  Plaintiff was thus aware (or at least had constructive notice of) the Warranty's terms prior to purchasing the Coffee Maker and had a full opportunity to review them.  If Plaintiff elected not to do so, any resulting injury was due to his own inaction.

Plaintiff raises the specter of financial harm *if* he were to pay out-of-pocket to ship the Coffee Maker to Defendant for repair or *if* he were to void the Warranty by repairing the Coffee Maker on his own.  But federal courts are not in the business of remedying speculative harms.  Because Plaintiff has not yet suffered an actual, concrete injury as a result of the Warranty and disclaims any intent to do so in the future, his MMWA claim is premature.

## 2. The Court Lacks Statutory Subject Matter Jurisdiction over Plaintiff's Magnuson-Moss Warranty Act Claim

The Court lacks authority to hear this action for an additional reason: Plaintiff has not satisfied the statutory jurisdictional requirements for a federal class action under the MMWA.  Congress vested federal courts with original jurisdiction over two types of civil cases: matters that present a federal question because they "aris[e] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and matters in which the parties have diversity of citizenship and the amount in controversy exceeds $75,000, *id.* § 1332(a).  Actions that do not fall within either of these categories and for which federal jurisdiction is not otherwise authorized by statute must originate

instead in state courts.  *See Palmore* v. *United States*, 411 U.S. 389, 401 (1973)

(explaining that "state courts provided the only forum for vindicating many

important federal claims" until Congress vested lower federal courts with

general federal question jurisdiction in 1875).

The MMWA is in part a jurisdiction-vesting statute.  It creates federal

question jurisdiction over certain warranty claims.  It provides:

> (1) [A] consumer who is damaged by the failure of a
> supplier, warrantor, or service contractor to comply
> with any obligation under this chapter, or under a
> written warranty, implied warranty, or service contract,
> may bring suit for damages and other legal and
> equitable relief — (A) in any court of competent
> jurisdiction in any State or the District of Columbia; or
> (B) in an appropriate district court of the United States,
> *subject to paragraph (3) of this subsection.*

15 U.S.C. § 2310(d)(1) (emphasis added).  This provision thus vests both state

and federal courts with jurisdiction over MMWA claims.  The statute goes on to

limit its grant of federal jurisdiction, specifying:

> (3) No claim shall be cognizable in a suit brought under
> paragraph (1)(B) of this subsection — (A) if the amount
> in controversy of any individual claim is less than the
> sum or value of $25; (B) if the amount in controversy is
> less than the sum or value of $50,000 (exclusive of
> interests and costs) computed on the basis of all claims
> to be determined in this suit; or (C) if the action is
> brought as a class action, and the number of named
> plaintiffs is less than one hundred.

15 U.S.C. § 2310(d)(3).  Reading those two provisions in tandem, the MMWA

imposes three requirements for suits originating in federal district court: (i) a

minimum individual amount in controversy of $25; (ii) a minimum aggregate

amount in controversy of $50,000; and (iii) a numerosity requirement of at

16

least one hundred named plaintiffs.  *See* HERBERT B. NEWBERG & WILLIAM B. RUBENSTEIN, NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 21:7 (6th ed. 2023) (emphasizing that for federal jurisdiction under the MMWA, "there must be at least 100 *named plaintiffs*, not just 100 class members," and noting that this requirement "is unique to the MMWA and peculiar" (emphasis in original)).

Plaintiff rightly concedes that his pleading does not satisfy the MMWA's jurisdictional criteria.  As the sole named plaintiff in this action, he is ninety-nine named plaintiffs short of subsection (3)'s requirement.[3]  Instead, Plaintiff asserts that the Class Action Fairness Act ("CAFA") provides an alternative basis for jurisdiction over his MMWA claims.  (Pl. Opp. 4-5).  Enacted in 2005, CAFA vests district courts with original jurisdiction over

> any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which — (A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2).  CAFA thus provides for federal jurisdiction over certain class actions between diverse parties.  The issue is not whether the operative

---

[3]  Plaintiff likely has not satisfied the MMWA's $50,000 aggregate minimum damages requirement, either.  His individual damages are certainly less than that amount; they likely do not exceed $1,099.99, the amount he paid for his Coffee Maker.  (*See* AC ¶ 3).  And he names no other plaintiffs whose injuries can be aggregated with his.  *See Ware* v. *Best Buy Stores, L.P.*, 6 F.4th 726, 731-32 (7th Cir. 2021) (determining MMWA's $50,000 threshold was not met when the only named plaintiffs' claims did not exceed $5,000).

complaint satisfies these criteria; Plaintiff is a New York citizen, Defendant is incorporated in Delaware and principally conducts business in New Jersey, and the alleged value of this suit to the putative nationwide class exceeds $5,000,000. (AC ¶¶ 3, 5). Because the pleading satisfies CAFA's jurisdiction requirements but not the MMWA's, the relevant question is instead a legal one: whether CAFA provides an alternative basis for federal jurisdiction over MMWA claims, or whether the MMWA's more stringent federal jurisdictional requirements must always be met.

This Court is not the first to consider that question. Perhaps unsurprisingly, courts are divided into two camps. *See* NEWBERG & RUBENSTEIN ON CLASS ACTIONS, *supra*, § 21:7 ("There is a split in the circuits about CAFA's relationship to the MMWA."). In the first group are courts that consider CAFA to be a permissible workaround to the MMWA's jurisdictional requirements. In a nonprecedential 2013 opinion, the Sixth Circuit held that CAFA provides an independent basis for federal subject matter jurisdiction in MMWA cases, even where the MMWA's 100 named plaintiff requirement is not met. *Kuns* v. *Ford Motor Co.*, 543 F. App'x 572, 574 (6th Cir. 2013) (unpublished). In reaching this conclusion, the Sixth Circuit explained that it was following a trend among district courts and observed that Congress's intent in enacting CAFA was to expand federal jurisdiction over class actions. *Id.*; *see also* S. REP. NO. 109-14 at 42 (2005) (clarifying that Congress enacted CAFA for the purpose of expanding federal court jurisdiction over class actions).

District courts that share the Sixth Circuit's view supplement its purpose-driven reasoning with analysis of CAFA's text.  Several emphasize the breadth of CAFA's language, citing its grant of federal jurisdiction over "*any* civil action*" that meets the statute's diversity and amount-in-controversy requirements.  *See, e.g.*, *Weisblum* v. *Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 293-94 (S.D.N.Y. 2015) (emphasis added) (quoting 28 U.S.C. § 1332(d)(2)); *see also Chavis* v. *Fid. Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 626-28 (D.S.C. 2006).  They also note that although CAFA explicitly excepts certain claims, including claims brought under the Securities Act of 1933 and the Securities Exchange Act of 1934, *see* 28 U.S.C. § 1332(d)(9), it does not except MMWA claims.  *See Weisblum*, 88 F. Supp. at 294 ("[T]here is no basis to read an MMWA exception into CAFA that Congress itself chose not to include."); *see also Borchardt* v. *Mako Marine Int'l, LLC*, No. 08 Civ. 61199 (KAM), 2010 WL 11504788, at *1-2 (S.D. Fla. Oct. 6, 2010) (finding it salient that Congress did not except the MMWA from CAFA despite legislating with awareness of its strict limits on federal class actions).  Because MMWA claims are civil actions and are not otherwise excepted from CAFA's plain text, it follows under this logic that in enacting CAFA in 2005, Congress opened a second jurisdictional door for MMWA plaintiffs to access federal forums.

The trend has shifted away from this view in recent years.  In 2020, the Ninth Circuit issued a published opinion determining that the MMWA is the exclusive vehicle for federal class actions raising claims under that statute.  *Floyd* v. *Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1032-35 (9th Cir. 2020).

The Third Circuit reached the same conclusion earlier this year.  *See Rowland*
v. *Bissell Homecare, Inc.*, — F.4th —, Nos. 23-1940, 23-1941, 23-1955, 23-
1960, 2023 WL 4419370, at *2-5 (3d Cir. July 10, 2023).[4]  Courts following
this approach focus primarily on the language of the MMWA and the
interpretive presumption against repeal by implication.  To the first point, they
note that the MMWA is unequivocal that "*[n]o claim shall be cognizable* in a suit
brought under paragraph (1)(B) of this subsection" (in other words, in federal
court) unless its jurisdictional requirements are satisfied.  15 U.S.C.
§ 2310(d)(3) (emphasis added); *see also Rowland*, 2023 WL 4419370, at *3
(relying on dictionary definitions of "cognizable" to conclude that Congress
intended paragraph (1)(B) to be the exclusive means of federal jurisdiction over
MMWA claims); *accord Ebin* v. *Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR),
2013 WL 3936193, at *2 (S.D.N.Y. July 26, 2013).  To the second, they
emphasize that "absent a clearly expressed congressional intention to the
contrary," *i.e.*, an explicit amendment or repeal, courts should read statutes in
a way that makes each effective.  *Rowland*, 2023 WL 4419370, at *5 (quoting
*J.E.M. Ag Supply, Inc.* v. *Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143-44
(2001)).  Applying this rule, they conclude that the MMWA and CAFA can be
reconciled if CAFA is read to govern class actions not already provided for by
the more specific requirements of the MMWA.  *Id.* (citing the "basic principle"

---

[4]     No other Court of Appeals has squarely addressed the jurisdictional interplay between
the MMWA and CAFA.  *See Ware*, 6 F.4th at 732 (declining to reach the issue because it
lacked subject matter jurisdiction for the independent reason that the value of the
named plaintiffs' claims did not exceed $50,000).

that "a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum" (internal quotation omitted)); *see also Floyd*, 966 F.3d at 1035 (giving effect to the MMWA's jurisdictional requirements after determining that "the statutory language of the MMWA and of CAFA is not irreconcilable").

For largely the reasons aptly laid out by the Third and Ninth Circuits, and based on its own careful review of the MMWA's text and the relationship between the federal jurisdictional statutes more broadly, the Court finds that CAFA does not provide a workaround to the MMWA's federal jurisdictional requirements. Questions of statutory interpretation require the Court to "begin with the text of the statute to determine whether the language at issue has a plain and unambiguous meaning." *Louis Vuitton Malletier S.A.* v. *LY USA, Inc.,* 676 F.3d 83, 108 (2d Cir. 2012) (citations omitted). The text is considered in "the specific context in which that language is used, and the broader context of the statute as a whole." *In re Ames Dep't Stores, Inc.,* 582 F.3d 422, 427 (2d Cir. 2009) (internal quotation omitted). Where the meaning of a statute is ambiguous, a court may consult extrinsic materials such as the statute's legislative history. *Louis Vuitton,* 676 F.3d at 108 (citing *Exxon Mobil Corp.* v. *Allapattah Servs., Inc.,* 545 U.S. 546, 568 (2005)).

The plain language of the relevant statutes, considered in context, makes clear that the MMWA is the exclusive source of federal jurisdiction over federal warranty claims. The Court recognizes that, as is often the case, canons of statutory interpretation do not all counsel for the same outcome. *See* Karl N.

21

Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed*, 3 VAND. L. REV. 395, 401 (1950) (asserting that "there are two opposing canons on almost every point"). In this case, there is some tension between the principle that Congress legislates with knowledge of other statutes, which may favor the Sixth Circuit's view, and the principles that more tailored statutes control over general ones and that courts should construe statutes to coexist whenever possible, both of which favor the opposite conclusion. The Court gives more weight to the latter arguments because to hold otherwise would render meaningless the exacting jurisdictional requirements that Congress took care to include in the MMWA. It is an extraordinary thing for a court to effectively nullify a federal statute. *See Warth*, 422 U.S. at 498 (describing the "proper — and properly limited — role of the courts in a democratic society"). Absent constitutional deficiencies, the power to amend or repeal federal statutes belongs exclusively to Congress. Because CAFA does not evince a clear intent by Congress to supplant the MMWA's jurisdictional requirements, the Court will not permit Plaintiff to evade them. *See Hawaii* v. *Off. of Haw. Affs.*, 556 U.S. 163, 175 (2009) (requiring "clear and manifest intent" congressional intent for implied repeal (internal quotation omitted)); *see also* Sarah Denis, *Using the Class Action Fairness Act As a Loophole Around the Magnuson Moss's Jurisdictional Requirements*, 19 J. CONSUMER & COM. L. 124, 128 (2016) ("[C]ourts should not allow CAFA to create a loophole on what Congress expressly set out in 1975.").

Ultimately, the Court does not share the concern of *Weisblum* and others about Congress's failure to include the MMWA in CAFA's list of enumerated exceptions.  While it is true that courts should give import to Congress's exclusion of an item from a list, *see Yates* v. *United States*, 574 U.S. 528, 543 (2015), there is an explanation for that omission here: the statutes are directed at different subjects.  The MMWA creates a federal cause of action and thus creates federal question jurisdiction.  *See* H.R. REP. NO. 93-1107 at 7724 (1974) (making clear that the MMWA grants federal question jurisdiction because in the absence of its amount-in-controversy requirements, "a civil action on a warranty under the [MMWA] could be brought in a district court of the United States without regard to the amount involved").  By contrast, CAFA allows for certain state-law claims to proceed in federal court under diversity jurisdiction. *Floyd*, 966 F.3d at 1034-35.  Nothing in CAFA's text indicates congressional intent to modify the requirements for class actions raising *federal* claims.  *See Opheim* v. *Aktiengesellschaft*, No. 20 Civ. 2483 (KM), 2021 WL 2621689, at *13 (D.N.J. June 25, 2021) ("Because an MMWA claim creates a federal-question case, CAFA does not apply to that claim.").  CAFA's failure to address the MMWA is sensical in this context.

While this issue can be resolved on a textual analysis alone, the Court includes a consideration of legislative history in the interest of being thorough. Congress's express purpose in including strict jurisdictional requirements in the MMWA was "to avoid trivial or insignificant actions being brought as class actions in the federal courts."  H.R. REP. NO. 93-1107 at 7724; *see also Shoner*

23

v. *Carrier Corp.*, 30 F.4th 1144, 1149 (9th Cir. 2022) ("[T]he MMWA's jurisdictional hurdles were meant 'to restrict access to federal courts.'" (quoting *Saval* v. *BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983))). This is not surprising, as the regulation of warranties is largely the province of state law. But the Court is not convinced that permitting MMWA class actions to proceed under CAFA undermines this goal. CAFA has jurisdictional limitations of its own, including the diversity of citizenship requirements discussed previously and a $5,000,000 minimum aggregate amount in controversy. *See* 28 U.S.C. § 1332(d)(2). Consequently, although CAFA was intended to expand federal jurisdiction over class actions, *see* S. REP. NO. 109-14 at 42, it also keeps low-dollar disputes out of federal court, *see Weisblum*, 88 F. Supp. 3d at 294 ("CAFA's own limitations … ensure that trivial and minor actions still cannot be brought as class actions in federal courts."). Although the MMWA certainly goes further than CAFA in its limitations, their effects are not as inconsistent as they may initially seem. In short, legislative history does not weigh strongly for one outcome or the other.

After considering statutory text, structure, and history, the Court joins the Third and Ninth Circuits in finding that CAFA does not displace the MMWA's stringent federal jurisdictional requirements. Because Plaintiff has not satisfied those requirements, the Court lacks a statutory basis for subject matter jurisdiction, and therefore has no authority to hear the present dispute.

Importantly, this decision is not fatal to Plaintiff's ability to pursue his warranty claims, either individually or on behalf of a class of similarly situated

consumers.  He simply must bring them in state court instead.  State courts are presumptively competent to adjudicate federal questions and may do so unless Congress affirmatively strips them of jurisdiction over a particular type of federal claim.  *Tafflin* v. *Levitt*, 493 U.S. 455, 458-59 (2009); *see also Claflin* v. *Houseman*, 93 U.S. 130, 137 (1876) ("Congress may, if it see[s] fit, give to the Federal courts exclusive jurisdiction[.]" (citations omitted)).  Congress did no such thing here.  In fact, the MMWA explicitly contemplates state court actions.  *See* 15 U.S.C. § 2310(d)(1) ("[A] consumer who is damaged by [an unlawful warranty] … may bring suit for damages and other legal and equitable relief … in any court of competent jurisdiction in any State or the District of Columbia[.]").  And Congress did not limit state court jurisdiction over MMWA claims in the way it limited federal court jurisdiction — the MMWA's amount-in-controversy and numerosity requirements apply only to suits "brought under paragraph (1)(B)" (in other words, suits originating in federal district court).  *Id.* § 2310(d)(3).  The MMWA thus creates a federal right that can be vindicated in all instances in state court and in some instances in federal court.  Nothing in this Opinion prevents Plaintiff from refiling this suit in state court, unrestrained by the MMWA's limits on federal jurisdiction.

### 3.    The Court Dismisses the Remaining State-Law Claims

Having dismissed the sole federal claim in this action, the Court considers how to proceed with Plaintiff's remaining common-law claims for unjust enrichment, fraud, fraudulent omission, and his claim of deceptive business practices under Section 349 of the New York General Business Law.

(*See* AC ¶¶ 63-89).  The Court may exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  But "when a district court correctly dismisses all federal claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the district court is thereby precluded from exercising supplemental jurisdiction over related state-law claims."  *Cohen* v. *Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) (citing 28 U.S.C. § 1447(c)); *cf. Valencia ex rel. Franco* v. *Lee*, 316 F.3d 299, 305-06 (2d Cir. 2003) (explaining that district courts may, in their discretion, retain supplemental jurisdiction over state-law claims when all federal claims are dismissed for failure to state a claim pursuant to Rule 12(b)(6)).  Because the Court lacks original jurisdiction over Plaintiff's MMWA claim, it also lacks supplemental jurisdiction over his related state-law claims.  The Court thus dismisses Plaintiff's state-law claims without prejudice as to their refiling in the proper forum.

### 4. The Court Denies Plaintiff Leave to Amend

Plaintiff requests leave to amend his pleading should the Court grant any part of Defendant's motion.  (Pl. Opp. 19).  Courts should freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  As such, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."  *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).  It remains, however, "within the sound discretion of the district court to grant or deny leave to amend."  *Broidy*

*Cap. Mgmt. LLC* v. *Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks and citation omitted).  Leave may be denied where the proposed amendment would be futile.  *See Olson* v. *Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020).  Amendment is futile if the "amended portion of the complaint would fail to state a cause of action[.]"  *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *cf. Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (permitting amendment where altered pleadings would be "sufficient to withstand a motion to dismiss").

The Court denies Plaintiff leave to amend because such amendment would be futile.  It well may be that Plaintiff can replead an injury-in-fact to Article III's satisfaction.  But the Court has no reason to believe that Plaintiff could meet the MMWA's jurisdictional requirements; Plaintiff has not indicated that ninety-nine additional named Plaintiffs are waiting to join his suit.  Because amendment would not cure the pleading deficiencies that led the Court to dismiss this suit in the first instance, Plaintiff's request for leave to amend is denied.

## CONCLUSION

Because the Court lacks both constitutional and statutory authority to reach the merits of Plaintiff's federal claim, Defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED.  Plaintiff's claims are dismissed without prejudice.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

27

SO ORDERED.

Dated:      August 2, 2023
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge